416 So.2d 87 (1982)
STATE of Louisiana
v.
Bobby Glenn ROWE.
No. 81-KA-3017.
Supreme Court of Louisiana.
June 21, 1982.
Dissenting Opinion June 24, 1982.
Dissenting Opinion July 8, 1982.
*88 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Kay Kirkpatrick, Ralph L. Roy, Asst. Dist. Attys., for plaintiff-appellee.
John P. Calmes, Jr., Baton Rouge, for defendant-appellant.
Dissenting Opinion of Lobrano, J., June 24, 1982.
Dissenting Opinion of Blanche, J., July 8, 1982.
FRED C. SEXTON, Jr., Justice Ad Hoc.[*]
The defendant, Bobby Glenn Rowe, was charged on March 10, 1980, by bill of information with armed robbery for his participation in the January 3, 1980, armed robbery of Lee's Grocery in Baton Rouge, Louisiana. Larry J. Mack and Robert Pratt were also charged with armed robbery in the same bill of information. The court minutes reflect that on May 8, 1980, Ms. Michelle Fournet was appointed to defend both defendant and Mack. On July 14, 1980, the trial court ordered the trials of the three co-defendants to be severed. The defendant's trial was held on July 17 and 18, 1980. Larry Mack's trial was scheduled for July 23 but Mack entered a guilty plea before that date. On the date the case was called, due to confusion over who was appointed to defend Robert Pratt, the court appointed Denis Weber as Pratt's defense counsel and continued his trial until August 18, 1980. After trial on July 17 and 18, 1980, the defendant was found guilty as charged by a unanimous verdict and was sentenced on September 4, 1981, to fifty (50) years imprisonment at hard labor.
The state's theory of the case is that the defendant borrowed a car from a neighbor and drove it, with Mack and Pratt accompanying him, to Lee's Grocery in furtherance of plans formulated earlier to rob the store. Upon arriving at the store, Pratt went into the store and conducted a reconnaissance mission in order to determine the number of persons in the store and the precise location of a pistol Rowe had seen under the counter on a previous visit to the store. Pratt completed his mission and told Mack and the defendant that the cashier was the only person in the store and that the pistol was still located under the counter. Armed with this information and a revolver, Larry Mack entered the store and forced the cashier, at gunpoint, to place the contents of the cash register in a paper bag. Mack then fled on foot with approximately $120 in cash, change and food stamps. He also took the gun from under the counter. The cashier, Ms. Aucoin, notified the police of the robbery, and identified Larry Mack as her assailant after examining police photographs. *89 Based on information received from a confidential informant the police located and arrested Larry Mack in a motel room in Baton Rouge, near the scene of the robbery. The defendant, Pratt and two women were also arrested.
The defendant, Bobby Glenn Rowe, was ultimately found guilty of armed robbery. After the trial, on October 20, 1980, the court granted defendant's counsel's motion to withdraw and substituted Mr. John Calmes as attorney of record.
The defendant initially urged four assignments of error. His second assignment, dealing with the admissibility of a confession, was not briefed or argued before this court and thus is not considered. State v. Edwards, 261 La. 1014, 261 So.2d 649 (1972). Because of our disposition with respect to the final two assignments of error, we do not reach the defendant's first assignment which is based on the prosecutor's alleged systematic exclusion of black prospective jurors from the jury by use of peremptory challenges.
In his third assignment of error, the defendant urges that the trial court erred in denying defendant's court appointed attorney's motion to withdraw as counsel of record, due to a conflict of interest. Defense counsel, Ms. Fournet, made this motion prior to trial. Defendant's final assignment of error is grounded upon the trial court's denial of defendant's motion for a new trial. Since assignments of error three and four are closely interconnected, to facilitate discussion, the assignments will be merged and treated simultaneously.
The testimony of Ms. Fournet adduced at the hearing on the motion for a new trial indicates that on July 14, 1980, the date both defendants were initially set for trial, she was representing both of them. She testified that she filed a motion to withdraw from defendant Rowe's case. She then indicated to the court that Mr. Mack wanted to plead guilty. A recess occurred and thereafter, Ms. Fournet advised the trial court that Mr. Mack was dissatisfied with her representation and that he wished to hire an attorney. Mack affirmed such in person to the court and further stated that his reason for doing so was that Ms. Fournet was representing both him and Bobby Glenn Rowe. He stated that she had advised him that he should testify against Bobby Glenn Rowe. On the record, Ms. Fournet stated that she informed Mack that his agreement to testify against Rowe was not part of any plea bargain and she also stated that she understood that the District Attorney intended to call Mack as a state's witness against Rowe. The record reflects a discussion between the court, District Attorney and Ms. Fournet with the general thought that if Mack's motion for continuance to retain counsel was granted, Ms. Fournet's motion to withdraw as counsel for Rowe would be made moot. The court granted Mack's motion, severed his trial and continued it until July 26, 1980. The record does not reflect that the trial court ever acted upon Ms. Fournet's motion. Ms. Fournet further testified that she contacted Mack before the trial and was told by him that he did not intend to testify against Rowe.
During the course of the trial Larry Mack was called as a state's witness and was given use and derivative immunity and thus was compelled to testify. During the defense's cross-examination of Mack the following discourse was had relative to Mack's possible plea of guilty and testimony in exchange for the possibility of favorable consideration during sentencing:
"Q. You've been thinking about this for a while, haven't you?
A. Thinking about what for a while?
Q. Whether or not you are going to testify today?
A. Right.
Q. You've been talking it out at the parish prison?
A. No.
Q. You haven't been talking about it out there?
A. Well I said I wasn't going to testify against him because you came to me with, `don't testify against him'. You are defending him. You don't *90 think I should testify against him. That
Q. You told me you didn't want to testify, isn't that correct?
A. Right. You're telling me you don't think I should and at first you was telling me to testify against him when you was defending me." (Emphasis added).
Ms. Fournet immediately asked that the jury be retired and further requested a mistrial citing the highly prejudicial nature of the witness' comment and the existence of a conflict due to her past representation of the witness and her present representation of the defendant. She argued that due to such past representation of the witness her ability to cross-examine the witness and thereby adequately and effectively represent the defendant was severely limited. Alternatively Ms. Fournet made a motion to withdraw as counsel based on the statement made by the witness and the conflict that existed. The court denied both motions.
She then asked for and was granted an admonition to the jury instructing them to disregard Larry Mack's last statement regarding her advice that he testify against defendant. The witness was also instructed by the court not to refer to any events that took place while Ms. Fournet represented him. The defense counsel then asked five questions involving the dividing of the money before tendering the witness. Ms. Fournet once again urged a motion for mistrial and a motion to withdraw. Both were denied.
This court in the recent case of State v. Ross, 410 So.2d 1388 (La.1982), addressed the question of joint representation and the conflicts of interest arising therefrom which can adversely affect a defendant's Sixth Amendment right to the effective assistance of counsel. The Ross case is virtually indistinguishable from the case at bar with the exception that in Ross no objections were made during the course of the trial regarding the conflict issue. In Ross, this court stated:
"The trial court erred in failing to recognize a conflict of interest that existed through the appointment of one attorney to represent defendant and his co-defendant.
The right of every criminal defendant to have the assistance of an attorney during the proceedings against him is a cornerstone of our legal system. Amendment 6, U. S. Constitution; Article 1, Section 13, Louisiana Constitution (1974). To be more than just a hollow right, our law requires that assistance of counsel be effective. As a general rule, courts have held that an attorney laboring under an actual conflict of interest cannot render effective legal assistance to the defendant he is representing. The issue of conflicting loyalties usually arises in the context of joint representation of co-defendants. Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1976); Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Johnson v. Hopper, 639 F.2d 236 (C.A.5 1981). But it has also surfaced in cases like the one at bar, where an attorney runs into a conflict because he or she is required to cross-examine a witness who is testifying against the defendant and who was or is a client of the attorney. United States v. Morando, 628 F.2d 535 (C.A.9 1980); United States v. Partin, 601 F.2d 1000 (C.A.9 1979). Although the issue can arise in different contexts, the legal principles are the same.
Multiple representation is not per se illegal and does not violate the Sixth Amendment to the U. S. Constitution (or Article 1, Section 13 of the Louisiana Constitution) unless it gives rise to a conflict of interest. Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); Holloway, supra. The mere possibility of conflict is insufficient to reverse a criminal conviction. However, if the defendant establishes that an actual conflict of interest adversely affected his lawyer's performance, he has demonstrated a violation of his Sixth Amendment rights under the U. S. Constitution and his Article 1, Section 13 rights under the *91 Louisiana Constitution of 1974, Cuyler, supra. If an actual conflict exists, there is no need for a defendant to prove that he was also prejudiced thereby. Showing an actual conflict mandates reversal.

State v. Franklin, 400 So.2d 616, 1981 Supreme Court." (Emphasis added).
We determine that in the instant case there existed an actual conflict. Larry Mack, a co-defendant of Bobby Rowe's was called as a state's witness against Rowe, Ms. Fournet was obviously unable to adequately cross-examine Mr. Mack and thereby protect the defendant's interests due to the nature of the attorney client relationship that had existed between Mack and Ms. Fournet.
In a situation such as exists here where one of two co-defendants who were, or are, being represented by the same defense counsel is called to testify against the other, thereby hampering the defense counsel's ability to protect the interests of the client at trial an actual conflict exists per se. Such a finding of actual conflict mandates reversal. State v. Ross, supra.
Therefore for the reasons stated above, the defendant's conviction is reversed and the case is remanded for a new trial.
REVERSED AND REMANDED.
ROBERT L. LOBRANO, J. Ad Hoc, dissents and assigns reasons.
BLANCHE, J., dissents and assigns reasons.
ROBERT L. LOBRANO, Justice Ad Hoc, dissenting.
I respectfully disagree with the majority view that defendant was deprived of his Sixth Amendment right to the effective assistance of counsel. The majority states that Ms. Fournet was "obviously" unable to cross-examine Larry Mack, the state's witness. (emphasis added). I do not find this to be correct. Ms. Fournet was in a better position than most defense attorneys to cross-examine Mr. Mack as he had consented to speak with her prior to defendant's trial. In most instances, state witnesses are very reluctant to talk with defense attorneys. Further, any prejudicial remarks made by Larry Mack were clearly admonished by the trial judge. I do not find that defendant was prejudiced in any way, nor was he deprived of his Sixth Amendment right to counsel.
I respectfully dissent.
BLANCHE, Justice (dissenting).
Though defendant and Larry Mack were initially represented by the same attorney, the trial judge ordered a severance and Mack was permitted, before defendant's trial, to retain his own counsel. When counsel cross-examined Mack, there was no joint representation and, consequently, no conflict of interest. The trial judge did not limit the scope, nor in any manner interfere with the effectiveness, of the cross-examination.
Because of the use and derivative immunity given Mack, as well as counsel's prior representation of him, defense counsel was in a more favorable position to conduct an effective cross-examination. Because the prejudicial remarks made by Mack were clearly elicited by defense counsel, the state should not be penalized by reversing defendant's conviction. Further, the trial judge corrected any possible prejudice when he admonished the jury.
Accordingly, I respectfully dissent.
NOTES
[*] Judges Fred C. Sexton, Jr., and William Norris, III, of the Court of Appeal, Second Circuit, and Judge Robert L. Lobrano of the Court of Appeal, Fourth Circuit, participated in this decision as Associate Justices pro tempore, joined by Chief Justice John A. Dixon, Jr., and Associate Justices Walter F. Marcus, Jr., Fred A. Blanche, Jr., and Harry T. Lemmon.