757 So.2d 50 (2000)
STATE of Louisiana
v.
Jabbar McGEE.
State of Louisiana
v.
Gregory D. Aples.
Nos. 98-KA-2116, 98-KA-2124.
Court of Appeal of Louisiana, Fourth Circuit.
February 23, 2000.
*54 Harry F. Connick, District Attorney for Orleans Parish, Holli Herrle-Castillo, Assistant District Attorney, New Orleans, Louisiana, Counsel for Plaintiff/Appellee.
Christopher A. Aberle, Louisiana Appellate Project, Mandeville, Louisiana, Counsel for Defendants/Appellants.
(Court composed of Judge STEVEN R. PLOTKIN, Judge DENNIS R. BAGNERIS, Sr., and Judge ROBERT A. KATZ).
BAGNERIS, Judge.

STATEMENT OF CASE
On January 12, 1998, defendants, Jabbar McGee and Gregory D. Aples, were charged by bill of information with distribution of cocaine in violation of La. R.S. 40:967.[1] In the same bill, defendant Jabbar McGee was also charged with one count of possession with the intent to distribute cocaine in violation of La. R.S. 40:967. McGee pled not guilty to both counts at his arraignment on January 28, 1998. Aples entered a plea of not guilty at his arraignment on February 4, 1998. On March 2, 1998, the trial court granted the defendants' motion to sever. The State objected to the ruling and sought review from this Court. On April 27, 1998, this Court granted the writ application in part and denied the writ in part. In writ 98-K-0561, this Court stated that it would not "interfere with the trial court's severance of the three defendants for trial. However, the trial court is ordered to conduct a hearing relative to the appointment of separate counsel if antagonistic defenses are to be employed." After a jury trial on April 30, 1998, McGee was found guilty as charged on both counts. Aples was found guilty of attempted distribution of cocaine after a jury trial on May 7, 1998.
Aples' sentencing hearing was held on May 21, 1998. On that day, the defendant filed a motion for new trial that was denied by the trial court. The defendant waived delays, and the trial court sentenced Aples to serve ten years at hard labor. The State then filed a multiple bill of information. The trial court adjudicated the defendant a second felony offender, vacated the original sentence and resentenced the defendant to serve ten years at hard labor. The trial court denied defendant's motion to reconsider sentence and granted defendant's motion for appeal. A return date of July 21, 1998, was set.
McGee's sentencing hearing was held on May 26, 1998. The trial court sentenced the defendant to serve ten years at hard labor, with the first five years without benefit of probation, parole or suspension of sentence on each count. The trial court denied the defendant's motion to reconsider sentence. The defendant's motion for appeal was granted and a return date of July 24, 1998, set.
Defendant McGee's appeal was lodged in this Court on August 27, 1998 and given docket number 98-KA-2116. Defendant Aples' appeal was lodged in this Court on August 31, 1998 and given docket number 98-KA-2124. The two appeals were consolidated for hearing. The defendants' appellate counsel filed an appellate brief on November 23, 1998. The state filed its brief on December 16, 1998. The defendants' counsel filed a reply brief on December 23, 1998. Defendant Aples filed a pro se appellate brief on October 29, 1999.

*55 STATEMENT OF FACT
On September 11, 1997, New Orleans Police Officer Yvonne Farve was part of an undercover narcotics investigation. She was dressed in regular clothing and drove a nontraditional police vehicle equipped with audio and video recording devices. As she entered the area of Orleans and Sumpter Streets, she observed a black male, wearing a dark colored cap, a blue shirt and fatigue pant standing on the corner of Orleans and Sumpter. Officer Farve made eye contact with the subject. She slowed down and rolled down her window. When the subject approached the vehicle, Officer Farve asked the subject if he knew where she could get a "twenty." The subject responded in the affirmative and told the officer to pull her vehicle to the side. The subject met with another black male standing near the street. Shortly thereafter, a black male riding a bike approached the officer's vehicle. The officer gave the bike rider a twenty dollar bill. The subject, dressed in a white shirt and blue pants, then gave the officer a rock of crack cocaine. After receiving the contraband from the bike rider, the officer left the area.
Officer Patrick Brown, the officer in charge of the undercover narcotics operation on September 11, 1997, supplied Officer Farve with United States currency which had been photocopied. Officer Brown, positioned on Orleans Avenue looking towards Gentilly Boulevard, maintained surveillance over the operation. He was equipped with a radio transmitter which allowed him to hear Officer Farve's conversations. He heard Officer Farve's conversation with defendant Aples. After the initial conversation, Aples approached McGee and Durvenay, who were standing near the street. Officer Brown saw McGee hand a small object to Durvenay. Durvenay then approached Farve's vehicle. Officer Brown heard the conversation between Farve and Durvenay. After Farve and Durvenay completed the transaction, Farve drove out of the area. Officer Brown then called in the arrest team, and the defendants were detained. McGee attempted to flee but was apprehended by Officers Daniel Scanlan and Bruce Adams.
As McGee attempted to escape, Officers Scanlan and Adams saw McGee throw a small plastic object on top of a small aluminum shed. Once McGee was apprehended, Officer Scanlan retrieved the object which turned out to be a small plastic bag containing crack cocaine.
The defendants were advised that they were under investigation for distribution of narcotics. Officer Adams took polaroid photographs of the three men. The photographs were taken to Officer Farve. She identified Aples and Durvenay as the men who sold her the crack cocaine. The defendants were arrested and advised of their rights. Officer Paul Toye conducted a search incident to arrest on McGee. Four hundred sixty three dollars were found on McGee, including the marked twenty dollar bill. No contraband was found on Aples or Durvenay.
The defendants and the State stipulated that the substances obtained during the incident tested positive for cocaine.
Jabbar McGee denied knowing Aples or Durvenay. He also denied selling cocaine. According to McGee, he had walked from his grandmother's house on St. Ann Street to his landlord's house to pay the rent. However, his landlord was not home so McGee went to visit his girlfriend. As he walked through the neighborhood, he saw a couple of friends, Brandon and Cornelius, and stopped to talk to them. He was standing on the corner of Orleans Street when he saw a couple of guys get arrested. After the officers arrested the two men, they approached him. Since he was smoking marijuana, he threw the marijuana cigarette down and attempted to run away. Brandon and Cornelius ran into Brandon's mother's house. McGee denied having possession of any cocaine. He acknowledged a prior conviction for kidnapping.

*56 DISCUSSION

Errors Patent
A review of the record for errors patent reveals none.
Assignment of Error Number One and Two
In these assignments, the defendants contend that the trial court erred by failing to conduct a pre-trial hearing to determine whether defendants were entitled to separate counsel.
On March 2, 1998, the trial court granted the defendants' motion to sever over the State's objection. The State sought supervisory review of the trial court's ruling from this Court. On April 27, 1998, this Court granted the State's writ in part and denied the writ in part, stating that it would not "interfere with the trial court's severance of the three defendants for trial" but the Court ordered the trial court to "conduct a hearing relative to the appointment of separate counsel if antagonistic defenses are to be employed." State v. Jabbar McGee, unpub., 98-0561 (La.App. 4th Cir. 4/27/98).
A review of the record indicates that the hearing ordered by this Court never took place. On appeal, the defendant suggests that the trial court erred when it failed to conduct the hearing and in allowing the same trial counsel to represent defendants McGee and Aples despite a conflict of interest. The defendants contend that having the same trial counsel created a conflict of interest because they had antagonistic defenses.
It is well settled that multiple representation is not per se illegal and does not violate the Sixth Amendment to the United States Constitution or Article 1, Section 13 of the Louisiana Constitution unless it gives rise to a conflict of interest. State v. Kahey, 436 So.2d 475 (La.1983). In State v. Edwards, 430 So.2d 60, 62 (La.1983), this court summarized the law applicable to claims that dual or multiple representation resulted in the ineffective assistance of counsel:
The relationship between joint representation and ineffective assistance of counsel has been thoroughly examined by the United States Supreme Court in its opinions rendered in Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), and Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); State v. Marshall, 414 So.2d 684 (La.1982). In Holloway, defendant raised the issue of a conflict of interest prior to a joint trial. In this situation, the Court held that the trial judge is required "either to appoint separate counsel or to take adequate steps to ascertain whether the risk [of a conflict of interest] was too remote to warrant separate counsel." In Sullivan, the defendant did not raise the issue of conflict of interest either before [or] during his separate trial. Rather, the defendant... raised the issue for the first time after his trial. In this situation, the Court held that a defendant "in order to establish a violation of the Sixth Amendment ... must demonstrate that an actual conflict of interest adversely affected his lawyer's performance...." Recently, in State v. Marshall, supra, we held that the time at which a concern over the effects of multiple representation is raised is the determinative factor in deciding whether the rules of Holloway or Sullivan are controlling.
The Sixth Amendment does not require "state courts themselves to initiate inquiries into the propriety of multiple representation in every case." Cuyler v. Sullivan, 446 U.S. 335, 346, 100 S.Ct. 1708, 1717, 64 L.Ed.2d 333 (1980). In fact, "[u]nless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry." Id. at 347, 100 S.Ct. at 1717. However, federal jurisprudence has also held that "where a defendant puts a trial judge on notice of the alleged conflict before or during trial and the trial court fails to *57 inquire into the conflict, a reviewing court will presume prejudice upon a showing of possible prejudice." United States v. Marrera, 768 F.2d 201, 205 (7th Cir.1985), cert. denied, Marrera v. United States, 475 U.S. 1020, 106 S.Ct. 1209, 89 L.Ed.2d 321 (1986), citing Holloway, supra, and Cuyler, supra. Thus, "[t]o decide whether to apply the Holloway test and afford defendant a per se presumption of prejudice or to apply the Cuyler test and grant the presumption of prejudice only upon a showing of actual conflict and adverse effect on counsel's performance, we must first determine whether the defendant put the trial judge on notice of the alleged conflict." Marrera, 768 F.2d at 206.
In the present case, defense counsel made no formal objection or motion to withdraw from the representation of either defendant. However, defense counsel sought and obtained a severance of trials for the defendants. The federal appellate court in United States v. Marrera, supra, held that
[t]he trial judge gave [defense] counsel forewarning of the potential conflict and thereafter reasonably relied on defense counsel to bring to the court's attention any conflict that might arise during the course of his representation.... [Because c]ounsel never mentioned the conflict problem again [, t]he judge did not neglect his duty in not inquiring further into the potential conflict problem. See Cuyler, 446 U.S. at 346-48, 100 S.Ct. at 1717-18 ("Absent special circumstances, ... trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist").

Marrera, 768 F.2d at 206.
"[S]ince ... the judge was not put on notice of an actual conflict and fulfilled his duty in warning counsel of the possibility for conflict, [the Marrera court] appl[ied] the Cuyler test, that is, [it] inquire[d] whether the potential conflict ever developed into an actual conflict which adversely affected defense counsel's performance." Marrera, 768 F.2d at 207.
For the same reasons, we consider that the Cuyler test that is, whether the potential conflict ever developed into an actual conflict which adversely affected defense counsel's performance is applicable here. State v. Kahey, supra; State v. Rowe, 416 So.2d 87 (La.1982). The first inquiry under the Cuyler test is whether the potential conflict ever developed into an actual conflict requiring defense counsel to make a choice advancing the interest of one defendant to the detriment of another defendant. An actual conflict of interest is established when the defendant proves that his attorney was placed in a situation inherently conducive to divided loyalties. State v. Kahey, supra.
In the case at bar, the trial court erred when it failed to conduct the hearing as ordered by this Court. We do not approve of the trial court ignoring our order and would not hesitate to reverse this conviction. However, the trial court's error was not prejudicial and was harmless as there were no antagonistic defenses between the defendants presented in this record. In fact, defendant McGee testified at his trial that he did not know the other defendants and was not involved in the sale of the cocaine to the police officer. Further, each defendant had a different basis for responsibility. Defendant Aples was the person who initially approached the officer and asked for what was she looking. Defendant Aples told the officer he knew where she could get a "twenty." Defendant Durvenay took the crack cocaine to the officer. Defendant McGee was found to have the marked currency used in the transaction. Thus, none of the defendants could have an antagonistic defense to the others. As there was no antagonistic defenses between McGee and Aples, defendant's trial counsel could represent both men.
This assignment is without merit.

*58 Aples' Pro Se Assignment of Error Number One

In this assignment, the defendant argues that the evidence was insufficient to support his conviction for attempted distribution of cocaine. He suggests that the State did not produce sufficient evidence to prove his intent to participate in the distribution of cocaine.
When assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. La. R.S. 15:438 is not a separate test from Jackson v. Virginia, supra, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, supra.
To support a conviction for an attempt, the State must prove that the defendant had the specific intent to commit the crime and did or omitted some act toward accomplishing his goal. A person may be convicted of an attempt to commit a crime even where it appears that the defendant actually perpetrated the offense. La. R.S. 14:27.
La. R.S. 40:967 provides that it is shall be unlawful for any person "knowingly or intentionally ... [t]o ... distribute, or dispense, a controlled dangerous substance classified in Schedule II." Cocaine and its derivatives are listed in Schedule II. La. R.S. 40:964. A defendant is guilty of distribution of cocaine when he transfers possession or control of cocaine to his intended recipients. State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; see La. R.S. 40:961(14). The state must show (1) "delivery" or "physical transfer;" (2) guilty knowledge of the controlled dangerous substance at the time of transfer; and (3) the exact identity of the controlled dangerous substance. State v. Miller, 587 So.2d 125, 127 (La.App. 2d Cir.1991).
All persons concerned in the commission of a crime, whether present or absent, and whether they either directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the offense, are principals. La. R.S. 14:24. Only persons who knowingly participate in the planning or execution of a crime are principals, and an individual may only be convicted as a principal for a crime for which he personally has the requisite mental state. State v. Marshall, 94-1282 (La.App. 4th Cir.6/29/95), 657 So.2d 1106. Mere presence at the scene is not enough. Id. The law of principals applies to all crimes including the offense of narcotics distribution. State v. Celestine, 95-1393 (La.1/26/96), 671 So.2d 896.
Officer Yvonne Farve, the undercover agent, testified that as she entered the area of Orleans and Sumpter Streets, she observed Aples, wearing a dark colored cap, a blue shirt and fatigue pants, standing on the corner of Orleans and Sumpter. Officer Farve made eye contact with Aples. She slowed down and rolled down her window. When Aples approached the vehicle, Officer Farve asked him if he knew where she could get a "twenty." *59 Aples responded in the affirmative and told the officer to pull her vehicle to the side. Aples met with another black male standing near the street. Shortly thereafter, Durvenay approached the officer's vehicle. The officer gave Durvenay a twenty dollar bill. Durvenay, dressed in a white shirt and blue pants, then gave the officer a rock of crack cocaine. After receiving the contraband, Officer Favre left the area.
Officer Patrick Brown testified he maintained surveillance over the undercover operation. He was equipped with a radio transmitter which allowed him to hear Officer Farve's conversations. He heard Officer Farve's conversation with defendant Aples. After the initial conversation, Aples approached McGee and Durvenay who were standing near the street. Officer Brown saw McGee had a small object to Durvenay. Durvenay then approached Farve's vehicle. Officer Brown heard the conversation between Farve and Durvenay. After Farve and Durvenay completed the transaction, Farve drove out of the area.
The defendants and the State stipulated that the substances obtained during the incident tested positive for cocaine.
Such evidence was sufficient for a jury to conclude that the defendant was involved the distribution of narcotics. The testimony of the police officers support the jury's verdict of attempted distribution of cocaine. The officers testified that the defendant was a principal in the sale of the cocaine to Officer Favre. The parties stipulated that the object sold to the undercover agent was cocaine. Defendant Aples' actions in approaching Officer Favre and telling her that he knew where she could get a "twenty" indicate his intent and willingness to participate in the distribution of narcotics. After Aples spoke with Officer Favre, he went directly to McGee. McGee then gave a rock of crack cocaine to Durvenay who took the cocaine to Officer Favre. Aples' actions constituted steps taken towards the distribution of cocaine.
Thus, the State produced sufficient evidence to support the defendant's conviction for attempted distribution of cocaine.
This assignment is without merit.

Aples' Pro Se Assignment of Error Number Two
The defendant further argues in his pro se appellate brief that he received ineffective assistance of counsel at trial. The defendant contends that his trial counsel was ineffective for (1) failing to object to the introduction of State exhibit number four, a laboratory report bearing the name of Wayne Johnson n/m and a testing date of 9/16/96; (2) agreeing to a stipulation that State's exhibits three and four proved the substance in question to be cocaine; (3) failing to object to the lack of ten days notice required by La. R.S. 15:499 et seq., which objection would have rendered State's exhibits three and four inadmissible; and (4) failing to object to the trial court's remark that "He is involved in the system right now, Mr. Meyer, so I'll overrule your objection to that question."
Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post conviction relief, filed in the trial court where a full evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Johnson, 557 So.2d 1030 (La.App. 4th Cir.1990); State v. Reed, 483 So.2d 1278 (La.App. 4th Cir. 1986). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. State v. Seiss, 428 So.2d 444 (La. 1983); State v. Ratcliff, 416 So.2d 528 (La. 1982); State v. Garland, 482 So.2d 133 (La.App. 4th Cir.1986); State v. Landry, 499 So.2d 1320 (La.App. 4th Cir.1986).
The defendant's claim of ineffective assistance of counsel is to be assessed by the two part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. *60 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La.1984). The defendant must show that counsel's performance was deficient and that the deficiency prejudiced the defendant. Counsel's performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. Strickland, supra at 686, 104 S.Ct. at 2064. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, supra at 693, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. State v. Sparrow, 612 So.2d 191, 199 (La.App. 4th Cir.1992).
This court has recognized that if an alleged error falls "within the ambit of trial strategy" it does not "establish ineffective assistance of counsel." State v. Bienemy, 483 So.2d 1105 (La.App. 4th Cir. 1986). Moreover, as "opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel's trial decisions. Neither may an attorney's level of representation be determined by whether a particular strategy is successful." State v. Brooks, 505 So.2d 714, 724 (La.1987), cert. denied, Brooks v. Louisiana, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987).
The defendant first argues that his trial counsel failed to object to the introduction of State exhibit four, a copy of the crime lab report which concerned the analysis of the cocaine. The defendant contends that the report introduced into evidence concerned another defendant. The report to which the defendant refers is a crime lab report which apparently was incorrectly filed in the defendant's appeal record. A review of the record indicates that a crime lab report concerning a defendant by the name of "Wayne Johnson" was mistakenly filed in the defendant's record. However, the record also contains the crime lab report for the present offense. The trial transcript indicates that the proper crime lab report was introduced at trial. Thus, this argument is without merit.
The defendant also contends that his trial counsel was ineffective when he agreed to the stipulation that State's exhibit three, the substance sold to Officer Favre, was cocaine as stated in State's exhibit four, the crime lab report which stated that the substance was positive for cocaine. The decision to stipulate to such evidence is part of an attorney's trial strategy and does not constitute ineffective assistance of counsel. Further, if trial counsel had not stipulated to the evidence, the State would have simply had the police officer in charge of the testing testify at trial.
Aples further suggests that his trial counsel was ineffective for failing to object to the State's failure to provide notice as required by La. R.S. 15:499. Defendant's argument is without merit as the State provided notice under La. R.S. 15:499 concerning its intention to use the crime lab report.
Lastly, defendant argues that his trial counsel failed to object to alleged prejudicial remarks made by the trial judge. The first statement occurred during voir dire. The State asked the prospective jurors if "anyone would be more sympathetic to Mr. Aples because he's gotten caught up in the system because of this?" Defense counsel objected. The trial judge overruled the objection stating "he has the right to ask the prospective jurors about sympathy. He is involved in the system right now, Mr. Meyer, so I'll overrule your objection to that question." The trial court's remark was entirely proper and without prejudice to the defendant. *61 As trial counsel had no basis to object to the judge's comment, he was not ineffective for failing to object.
The defendant also suggests that his trial counsel should have objected to the trial court's remark about the State's burden of proof after the parties stipulated that the substance sold to the officer was positive for cocaine. In explaining the stipulation to the jury, the trial court stated "As I explained earlier, there are three things they have to prove to you. They've just been relieved of one element of proof, that is that the substance is cocaine. They must still prove to you that Mr. Aples did distribute the cocaine and that he did so knowingly. There are the other elements they still must convince you of." As the trial court's comment was correct, defense counsel had no basis for objecting. Thus, he was not ineffective for not objecting to the trial judge's statement.
This assignment is without merit.

Aples' Pro Se Assignment of Error Number Three
In this assignment, the defendant suggests that the State's closing arguments improperly appealed to prejudice and that the State's rebuttal argument improperly reached beyond the facts of the case.
La.C.Cr.P. article 774 provides that "[t]he argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case. The argument shall not appeal to prejudice. The state's rebuttal shall be confined to answering the argument of the defendant."
A review of the trial transcript reveals that the trial court sustained the defendant's objections to comments made by the State during closing and rebuttal arguments. However, the defendant did not seek an admonition or mistrial after the trial court sustained his objections. It is well-settled, however, that where the district court acted properly in sustaining a defendant's objection to a remark made by the prosecutor, and the defendant thereafter fails to request either an admonition or a mistrial, he cannot later claim that the remark was prejudicial. State v. Baylis, 388 So.2d 713, 720-21 (La.1980). Thus, this issue cannot be reviewed on appeal.
This assignment is without merit.

Aples' Pro Se Assignment of Error Number Four
The defendant also argues in his pro se brief that his sentence under the multiple bill is illegal because the trial court failed to advise him of his rights prior to accepting defendant's guilty plea to the multiple bill. The defendant further contends that his sentence is illegal as the trial court did not comply with La.C.Cr.P. article 894.1 at the time it imposed sentence. Defendant also suggests that the sentence imposed is unconstitutionally excessive.
R.S. 15:529.1(D) provides that the trial court shall inform the defendant of the allegations contained in the multiple bill of information and to his right to be tried as to the truth thereof according to law prior to asking the defendant whether the allegations are true. Furthermore, if a defendant pleads guilty to the multiple bill or "if he acknowledges or confesses in open court ... that he has been so convicted", the trial court must first duly caution him as to his rights.
In State v. Martin, 427 So.2d 1182 (La. 1983) the Louisiana Supreme Court found that before a plea of guilty to a multiple bill can be said to be made knowingly and voluntarily, the colloquy between the trial judge and the defendant must show that the defendant was advised of his right to a formal hearing on the multiple bill and his right to require the State to prove the issue of his identity as a multiple offender.
In State v. Johnson, 432 So.2d 815 (La. 1983), the Louisiana Supreme Court held that R.S. 15:529.1(D) implicitly provides that the defendant should be advised by the court of his statutory right to remain *62 silent before the judge accepts his plea of guilty to the multiple bill. The court found that the right against self-incrimination does not depend on the nature of the proceedings and held that the defendant, after pleading not guilty, was no longer required to speak and, without being advised of his right to remain silent, his acknowledgment or confession of his prior felony conviction was invalid.
A review of the transcript of the multiple bill hearing held on May 21, 1998, reveals that the trial court advised the defendant of his rights prior to accepting his guilty plea to the multiple bill of information. Thereafter, the trial court stated it found defendant to be a second felony offender, vacated the original sentence imposed and resentenced defendant to ten years at hard labor. The defendant had been previously convicted of first degree robbery in 1993 and was sentenced to three years at hard labor.
The defendant further argues that the trial court imposed an illegal and unconstitutionally excessive sentence.
Article 1, Section 20 of the Louisiana Constitution of 1974 provides that "No law shall subject any person ... to cruel, excessive or unusual punishment."
A sentence within the statutory limit is constitutionally excessive if it is "grossly out of proportion to the severity of the crime" or is "nothing more than the purposeless imposition of pain and suffering." State v. Caston, 477 So.2d 868 (La. App. 4th Cir.1985). Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in La.C.Cr.P. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case. State v. Soco, 441 So.2d 719 (La.1983); State v. Quebedeaux, 424 So.2d 1009 (La.1982).
If adequate compliance with Article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Quebedeaux, supra; State v. Guajardo, 428 So.2d 468 (La.1983).
The articulation of the factual basis for a sentence is the goal of art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, resentencing is unnecessary even when there has not been full compliance with art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). A defendant's personal history, prior criminal record, seriousness of the offense and the likelihood of rehabilitation are elements that should be considered. State v. Jones, 398 So.2d 1049 (La.1981).
The trial court has great discretion in sentencing within the statutory limits. State v. Trahan, 425 So.2d 1222 (La. 1983). The reviewing court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La.C.Cr.P. art. 881.4(D).
In this case, the trial court made absolutely no mention of La.C.Cr. P. art. 894.1 or its provisions. The trial court clearly did not comply with the article. However, if the record supports the sentence, the sentence need not be set aside. Although the trial court did not provide reasons for the sentence imposed, the record clearly provides sufficient information to determine the reasonableness of the sentence. The defendant had a prior conviction for first degree robbery in 1993. He received a sentence of three years at hard labor for his conviction for first degree robbery. In the present case, which occurred in 1997, the defendant was found guilty of attempted distribution of cocaine. As a second offender, the minimum sentence the defendant could have received was seven and one-half years. The record supports the sentence imposed by the trial court. Further, given the defendant's prior criminal *63 history, the sentence imposed was not excessive.
This assignment is without merit.
Accordingly, defendants' convictions and sentences are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] A third defendant, Curtis A. Duvernay, was charged with distribution of cocaine. Durvenay pled guilty as charged on May 6, 1998. He was adjudicated a multiple offender and sentenced to fifteen years at hard labor, with the first five years to be served without benefit of probation, parole or suspension of sentence.