859 So.2d 776 (2003)
STATE of Louisiana
v.
Marvin DAVIS.
No. 2002-KA-2061.
Court of Appeal of Louisiana, Fourth Circuit.
October 8, 2003.
*777 Eddie J. Jordan, Jr. District Attorney, Leslie Parker Tullier, Assistant District Attorney, New Orleans, LA, for Appellee, State of Louisiana.
*778 Dwight Doskey, New Orleans, LA, for Defendant/Appellant, Marvin Davis.
(Court composed of Chief Judge WILLIAM H. BYRNES III, Judge MAX N. TOBIAS, JR., Judge LEON A. CANNIZZARO, JR.).
CANNIZZARO, Judge.

STATEMENT OF THE CASE
The defendant, Marvin Davis, was charged in a bill of information with possession of cocaine in violation of La. R.S. 40:967 and with possession of marijuana, after having been previously convicted of possession of marijuana ("possession of marijuana, second offense"), in violation of La. R.S. 40:966. The defendant pled not guilty to these charges. A few weeks later the court held a hearing on a motion to suppress the evidence seized in connection with the defendant's arrest. The motion was denied. The defendant was subsequently tried before the court in a bench trial and was found guilty as charged. At a sentencing hearing, the defendant was sentenced to forty months with credit for time served but was then charged under the Habitual Offender Law, La. R.S. 15:529.1. The defendant pled guilty to the habitual offender charge. The court then vacated the original sentence, adjudicated the defendant as a third felony offender, and again sentenced him to forty months with credit for time served. It is unclear from the record whether the defendant was sentenced to forty months on both of the possession offenses of which he was convicted or whether he was sentenced on only one of the offenses.
Prior to his sentencing, the defendant filed both a motion for a new trial and a motion for a post verdict judgment of acquittal. The motion for a new trial was denied several months after the defendant was sentenced. There is nothing in the record, however, to reflect that the court ever ruled on the other motion.

STATEMENT OF THE FACTS
At the defendant's trial New Orleans Police Department ("NOPD") Officer Herman Cade testified that he was conducting surveillance from an unmarked police car in the lower Ninth Ward of New Orleans.[1] Officer Cade observed the defendant park his white van in a park on Lizardi Street. Officer Cade said that he then saw the defendant meet a black male in the park, where Officer Cade observed the two men exchange "two things", one of which appeared to be money. Officer Cade testified that what transpired appeared to him to be a drug transaction.
Officer Cade testified that he then observed the defendant conduct another transaction that also appeared to be a drug transaction. Officer Cade said that the defendant was in his van when a red car with a female driver pulled in front of the van. The defendant exited the van, went to the red car, returned to the van, and then went back to the red car. The defendant returned to his van a second time and drove away. The female driver of the red car also drove away. Officer Cade pursued the driver of the van and made several attempts to get him to stop by activating the siren on his unmarked police car, but the driver of the van would not stop. Officer Cade then radioed for assistance.
NOPD Officer Kenneth Quetant testified at trial that he and his partner, NOPD Officer Mark Wilson, responded to Officer Cade's call for assistance. Officers Quetant *779 and Wilson stopped the defendant and ordered him to exit his van. As the defendant exited his van, Officer Cade cautioned Officer Quetant to "watch his [the defendant's] hands, watch his hands," because Officer Cade had seen that the defendant's hand was clenched into a fist. Officer Quetant saw the defendant drop a white napkin from his hand as he got out of the van, and Officer Cade retrieved the napkin and a white, rock-like substance that he saw inside the napkin when it fell on the ground. The defendant was arrested and handcuffed. When Officer Quetant was in the process of securing the defendant's van after the arrest, Officer Quetant looked into the van from the open door on the driver's side and noticed a "hand-rolled cigarette containing a green vegetable matter" in an ashtray. Believing it to be marijuana, the officer seized the cigarette.
NOPD Officer Joseph Tafaro testified at the trial that he tested both the rock-like substance that was discarded by the defendant and the cigarette that was recovered from the defendant's van. The rock-like substance tested positive for cocaine, and the cigarette tested positive for marijuana.
The defendant testified at trial and admitted that he had prior convictions for possession of cocaine and marijuana and for being a felon in possession of a firearm. However, he denied being guilty of the charges for which he was then being tried. The defendant testified that the female driving the red car that Officer Cade saw was his girlfriend and that the only thing Officer Cade witnessed was the defendant giving her a kiss. The defendant also testified that his van did not have an ashtray. The defendant further claimed that Officer Cade was "out to get me for the woman he want [sic]." The defendant testified that the woman to whom he referred was his ex-wife.[2]

ASSIGNMENT OF ERROR NUMBER 1
In his first assignment of error, the defendant argues that the court erred in denying his motion to suppress the evidence. It is uncontested that the evidence was seized without a warrant. The defendant contends that the police officers had no right to stop him and that the contraband that was used as evidence against him at trial was obtained illegally in violation of his constitutional rights.
Investigatory Stop
The first issue that must be considered is whether the officers who stopped the defendant had reasonable suspicion to conduct an investigatory stop. In Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court first recognized that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." 392 U.S. at 22, 88 S.Ct. 1868. According to Terry, such an investigatory stop is not an unlawful "seizure" and, therefore, does not violate the prohibition against unreasonable searches and seizures established by the Fourth Amendment to the United States Constitution. U.S. Const. amend. IV.
In Louisiana there is statutory authorization for investigatory stops on less than the probable cause required for an arrest. La. C.Cr.P. art. 215.1(A) provides that "[a] law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is *780 about to commit an offense and may demand of him his name, address, and an explanation of his actions."
In State v. Dank, 99-0390 (La. App. 4 Cir. 5/24/2000), 764 So.2d 148, this Court explained the factors a reviewing court must consider in determining whether an investigatory stop was permissible. This Court stated:
"Reasonable suspicion" to stop is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case.... Evidence derived from an unreasonable stop, i.e., seizure, will be excluded from trial. In assessing the reasonableness of an investigatory stop ....[t]he totality of the circumstances must be considered in determining whether reasonable suspicion exists. The detaining officers must have knowledge of specific, articulable facts, which, if taken together with rational inferences from those facts, reasonably warrant the stop. In reviewing the totality of the circumstances, the officer's past experience, training and common sense may be considered....
99-0390, pp. 4-5; 764 So.2d at 155 (citations omitted).
In the instant case Officer Cade testified at trial that he observed the defendant conduct what appeared to Officer Cade to be two drug transactions. After the defendant drove away from the scene of the second transaction, Officer Cade pursued the defendant's van and signaled the defendant to stop. The defendant ignored Officer Cade, who then radioed for assistance. Officer Cade had witnessed what reasonably appeared to him, based on his past experience, training, and common sense, to be criminal activity by the defendant. Therefore, under the Terry and the Dank cases, as well as La.C.Cr.P. art. 215.1(A), we find that the police officers had probable cause to conduct an investigatory stop of the defendant's van.
Warrantless Seizure of Evidence and the Plain View Exception
Once reasonable suspicion to conduct an investigatory stop has been established, it is necessary to determine whether the warrantless seizure of the cocaine and the marijuana made by the police officers was authorized under an exception to the requirement that a search warrant must be obtained prior to seizing evidence. In State v. Thompson, XXXX-XXXX (La.4/9/03), 842 So.2d 330, the Louisiana Supreme Court discussed the subject of warrantless searches and seizures as follows:
It is well settled that a search and seizure conducted without a warrant issued on probable cause is per se unreasonable unless the warrantless seizure and search can be justified by one of the narrowly drawn exceptions to the warrant requirement.
Id., p. 6, 842 So.2d at 335.
An exception to the requirement that a warrant must be obtained before evidence can be seized is the plain view exception. In Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968), the United States Supreme Court stated that "[i]t has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." 390 U.S. at 236, 88 S.Ct. 992, citing Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); United States v. Lee, 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202 (1927); Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924).
More recently, in Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), the United State Supreme *781 Court discussed the judicial development of the plain view exception and stated:
It is, of course, an essential predicate to any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. There are, moreover, two additional conditions that must be satisfied to justify the warrantless seizure. First, not only must the item be in plain view; its incriminating character must also be" immediately apparent." ... Second, not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must also have a lawful right of access to the object itself.
Id. at 136-37,110 S.Ct. 2301.
This Court, in State v. Jones, XXXX-XXXX (La.App. 4 Cir. 6/26/02), 822 So.2d 205, discussed the plain view exception as follows:
In order for an object to be lawfully seized pursuant to the plain view exception to the Fourth Amendment, (1) there must be a prior justification for the intrusion into a protected area; (2) in the course of which the evidence is inadvertently discovered; and (3) where it is immediately apparent without close inspection that the items are evidence or contraband. State v. Hernandez, 410 So.2d 1381, 1383 (La.1982); State v. Tate, 623 So.2d 908, 917 (La.App. 4 Cir.), writ denied, 629 So.2d 1126 and 1140 (La.1993). In Tate, this court further noted: In Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), the Court held that evidence found in plain view need not have been found inadvertently in order to fall within this exception to the warrant requirement, although in most cases evidence seized pursuant to this exception will have been discovered inadvertently. Tate at 917.
Id., p. 10, 822 So.2d at 211, quoting State v. Smith, 96-2161 (La.App. 4 Cir.6/3/98), 715 So.2d 547.
In the instant case when the defendant exited his van, Officer Cade observed that he had something in his fist and alerted Officer Quetant to this fact. When the defendant discarded the object he was holding in his fist, the napkin and a rocklike object that had been wrapped in the napkin fell on the ground. At this point both the napkin and the object were in plain view. When Officer Quetant was securing the van after the defendant had been arrested for the possession of cocaine, which is what the object that had been wrapped in the napkin appeared to be, the marijuana cigarette was in plain view in the van's ashtray. Officer Quetant was in the area of the van pursuant to a valid investigatory stop, the contraband that was seized was in plain view of Officer Quetant, and its incriminating nature was readily apparent. Therefore, we find that the seizure of the evidence introduced at the defendant's trial was lawfully seized pursuant to the plain view exception to the requirement of obtaining a warrant to seize evidence. The court correctly denied the defendant's motion to suppress the evidence.

ASSIGNMENT OF ERROR NUMBER 2
Defects in the Habitual Offender Proceeding
The defendant has raised as one of his two assignments of error several alleged errors patent in his sentence as a habitual offender. First, he alleges that he was adjudicated a habitual offender on each of the two counts of possession of which he was convicted, although the convictions arose from a single criminal episode. Second, the defendant alleges that he never *782 pled guilty to the charge of being a habitual offender. Third, the defendant alleges that before the judge adjudicated him as a habitual offender, the judge failed to advise him of his constitutional right to remain silent.
Adjudication as Habitual Offender on Two Counts from Single Criminal Episode
The defendant argues that the State did not seek to have him adjudicated as a habitual offender on only one of the two counts of possession of which he was convicted in this case. Rather, he argues that the State sought to use both counts of the conviction to impose a sentence under the Habitual Offender Law.
In State ex rel. Porter v. Butler, 573 So.2d 1106 (La.1991), the Louisiana Supreme Court held that "[m]ultiple convictions obtained the same day for offenses arising out of one criminal episode should be considered as one conviction for purposes of applying the habitual offender law in sentencing." Id. at 1109. In State v. Ward, 94-0490 (La.App. 4 Cir. 2/29/96), 670 So.2d 562, this Court discussed the evolution of the rule articulated in Porter and stated that "[u]nder Porter, the new general rule is that the trial court can multiple bill convictions rendered on the same day." Id., p. 12, 573 So.2d at 568 (emphasis in original). In Ward, however, this Court also stated that under Porter there is an exclusion from this general rule where more than one conviction is rendered on the same day and the convictions arise out of the same criminal act, episode, or event. Id.
There is another issue that must be addressed with respect to a conviction of the offense of possession of marijuana, second offense. La. R.S. 40:966(E)(1) provides that the penalty for a conviction of a first time offense of possession of marijuana shall be a fine not to exceed five hundred dollars or imprisonment in the parish jail for not more than six months or both. La. R.S. 40:967(E)(2) provides that the penalty for a conviction of a second offense of possession of marijuana shall be a fine not to exceed two thousand dollars or imprisonment for not more than five years with or without hard labor or both. Because possession of marijuana, second offense is a crime for which an offender may be sentenced to imprisonment at hard labor, it is a felony. La. R.S. 14:2. A first time offense of possession of marijuana is a misdemeanor, however, because it cannot be punished by imprisonment at hard labor. Because what would be a misdemeanor as a first offense is elevated to the status of a felony in the case of a second offense, a conviction for possession of marijuana, second offense is not subject to being further enhanced under the Habitual Offender Law. Possession of marijuana, second offense, is already an enhanced offense. See generally State v. Anders, XXXX-XXXX (La.App. 4 Cir. 1/31/01), 778 So.2d 1227; State v. Hymes, 513 So.2d 371 (La.App. 4th Cir.1987).
In the instant case, the defendant was convicted on the same day on two counts: possession of cocaine and possession of marijuana, second offense. Both convictions arose out of the same criminal episode. Therefore, only one of these convictions can be used to enhance the defendant's sentence in the habitual offender proceeding. Additionally, because possession of marijuana, second offense is already an enhanced offense, only the conviction of possession of cocaine can be used as an instant offense under the Habitual Offender Law in this case.
The State charged the defendant as a fourth felony offender, based on a multiple bill of information listing as predicate offenses a 1987 burglary conviction, a 1989 *783 conviction for distribution of cocaine, a 1995 conviction for possession of cocaine, and the two current convictions considered as a single offense. The court found that the State failed to prove the defendant's identity in connection with the 1987 burglary conviction, and the defendant was adjudicated as a third felony offender.
It is clear from the record that both of the current convictions were not used as two, separate offenses in the habitual offender proceeding. Therefore, the defendant's contention that each of the current convictions was used as an instant offense and, therefore, created an error patent is without merit, because only one sentence was imposed as to only one count and not both counts.
Guilty Plea and Right to Remain Silent
The defendant argues that his adjudication as a habitual offender is defective, because he was not advised of his right to remain silent and of his right to a formal hearing on the multiple bill of information charging him as a habitual offender. La. R.S. 15:529.1(D) provides that when such a bill of information is filed, the court rendering the conviction to be enhanced "shall inform him [the defendant] of the allegation contained in the information and of his right to be tried as to the truth thereof according to law...." In State v. Johnson, 432 So.2d 815 (La.1983), the Louisiana Supreme Court found that the phrase "if he acknowledges or confesses in open court, after being duly cautioned as to his rights" contained in La. R.S. 15:529.1(D) recognizes that the defendant has a right to remain silent at habitual offender hearings. The Supreme Court further found that La. R.S. 15:529.1(D) "implicitly provides that the defendant should be advised, by the court, of his statutory right to remain silent" and that the acknowledgment of the defendant's prior felony conviction was invalid, because he was not advised of that right. 432 So.2d at 817.
This Court applied the tenets of the Johnson case in State v. McGee, 98-2116, 98-2124 (La.App. 4 Cir. 2/23/00), 757 So.2d 50. In the McGee case this Court held that if a defendant pleads guilty, acknowledges guilt, or confesses in a proceeding on a multiple bill of information, "the trial court must first duly caution him as to his rights." Id., p. 17, 757 So.2d at 61. See also State v. Martin, 427 So.2d 1182 (La. 1983).
In the instant case there is nothing in the record to indicate that the defendant was advised of his rights prior to the court's acceptance of the defendant's guilty plea in the hearing where he was adjudicated a habitual offender. Therefore, this creates an error patent in this case.

ERRORS PATENT
In addition to the errors patent discussed above in connection with the defendant's second assignment of error, we have noted another error patent in the instant proceedings This error patent relates to the sentencing of the defendant.
La.C.Cr.P. art. 873 provides as follows:
If a defendant is convicted of a felony, at least three days shall elapse between conviction and sentence. If a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled. If the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately.
La.C.Cr.P. art. 853 provides, in relevant part, as follows:
A motion for a new trial must be filed and disposed of before sentence. The court, on motion of the defendant and *784 for good cause shown, may postpone the imposition of sentence for a specified period in order to give the defendant additional time to prepare and file a motion for a new trial.
La.C.Cr.P. art. 821(A) similarly provides that "[a] motion for post verdict judgment of acquittal must be made and disposed of before sentence."
In the instant case, the record indicates that the defendant's motion for a new trial was denied months after, rather than at least twenty-four hours before, his sentencing. Additionally, the record before us does not reflect that the motion for post verdict judgment of acquittal has ever been considered. Therefore, the requirements of La.C.Cr.P. arts. 821(A), 853, and 873 were not met.
In State v. Augustine, 555 So.2d 1331 (La.1990), superseded, in part, by statute as stated in State v. Martin, 93-1915 (La. App. 4 Cir. 9/29/94), 643 So.2d the Louisiana Supreme Court considered the mandatory delays specified in La.C.Cr.P. art. 873 that must be observed before a sentence can be imposed. The Supreme Court stated that "[a] sentence illegally imposed ... is null, and constitutes no valid premise for continued incarceration." 555 So.2d at 1334. Therefore, although the Court upheld the defendant's conviction, his sentence was vacated, and the case was remanded to the court for resentencing.
In State v. Seals, 95-0305 (La.11/25/96), 684 So.2d 368, the Supreme Court again considered the mandatory delays specified in La.C.Cr.P. art. 873 and distinguished that case from the Augustine case. In Seals the Court stated as follows:
The mandatory nature of the sentence of death distinguishes this case from the [sic] State v. Augustine, 555 So.2d 1331 (La.1990), where there was to be a decision by the trial judge on the term of years to be imposed. Delay or no delay, the sentence the judge was required to impose would have been the same. Thus, no prejudice could possibly have resulted from the failure of the court to comply with the delay.... Absent a showing that prejudice resulted from the failure to afford the statutory delay, reversal of the prematurely imposed sentence is not required.
Id., p. 17, 684 So.2d at 380.
This Court has also considered the mandatory delays in sentencing. Most recently, in State v. Foster, XXXX-XXXX (La.App. 4 Cir. 12/11/02), 834 So.2d 1188, this Court recognized that there are exceptions to the requirement of mandatory delays in cases where the failure to observe the delays is considered harmless error. In Foster, however, there was no indication that the defendant waived the statutory delays. Additionally, the defendant was appealing the excessiveness of his sentence. Therefore, this Court found that the mandatory twenty-four hour delay established by La. C.Cr.P. art. 873 delays had to be observed, and the case was remanded to the trial court so that the defendant could be resentenced. Where the sentence to be imposed is mandatory and not within the trial court's discretion, this Court has held that the failure to observe the mandatory delays in sentencing is harmless error. State v. Allen, 94-1895 (La.App. 4 Cir. 9/15/95), 661 So.2d 1078.
In the instant case the defendant was sentenced prior to a disposition being made on the defendant's motion for a new trial and his motion for a post verdict judgment of acquittal. This case, therefore, is distinguishable from the cases discussed above. The delay period for sentencing was never triggered, so it could not be waived. Only after the court has denied, if appropriate, both of the motions can the defendant be properly sentenced.
*785 The motion for a new trial was denied several months after the defendant was sentenced, but the motion for a post verdict judgment of acquittal is still outstanding. Therefore, this case is remanded to the court for the court to consider the defendant's motion for a post verdict judgment of acquittal and, if denied, for a sentencing hearing to be held not earlier than twenty-four hours after a final disposition of that motion has been made, unless the delays are expressly waived.
We also note that the defendant was originally sentenced to forty months "with credit for time served. The record does not indicate whether the defendant was sentenced for both possession of marijuana, second offense and possession of cocaine or for only one of the offenses. When and if the defendant is resentenced, the record should clearly reflect that the defendant is being sentenced for both offenses. The court must indicate for each count for which the defendant was convicted the specific sentence that was imposed for that count.
CONCLUSION
Based on the foregoing we affirm the defendant's conviction of possession of cocaine and his conviction of possession of marijuana, second offense. The defendant's sentence is hereby vacated, and this case is remanded to the court for a disposition of the motion for a post verdict judgment of acquittal. If the motion is denied, a sentencing hearing shall be held no earlier than twenty-four hours after the final disposition of the motion. Then the defendant must be sentenced on both of the counts of which he was convicted. He must be sentenced as a first offender on the conviction of possession of marijuana, second offense. The possession of cocaine conviction may be used as the instant offense if a new hearing to adjudicate the defendant as a habitual offender is held. At any such hearing the defendant must be advised that he has the right to a formal hearing or trial, and he must also be advised of his constitutional rights, particularly that he has the right to remain silent at such a hearing.
CONVICTION AFFIRMED, SENTENCE VACATED, AND REMANDED.
NOTES
[1] He was conducting surveillance, because there had been complaints that postal carriers had been robbed in the area.
[2] From what can be gleaned from the record, the defendant seems to be basing his defense on the idea that Officer Cade was trying to frame the defendant on criminal charges, because of a relationship between Officer Cade and the defendant's ex-wife.