839 So.2d 186 (2003)
STATE of Louisiana
v.
Lionel YOUNG.
No. 2002-KA-1280.
Court of Appeal of Louisiana, Fourth Circuit.
January 22, 2003.
*188 Harry F. Connick, District Attorney of Orleans Parish, Scott Peebles, Assistant District Attorney of Orleans Parish, New Orleans, LA, for Plaintiff/Appellee.
Christopher A. Aberle, Mandeville, LA, for Defendant/Appellant.
(Court composed of Judge PATRICIA RIVET MURRAY, Judge DENNIS R. BAGNERIS, SR., Judge EDWIN A. LOMBARD).
PATRICIA RIVET MURRAY, Judge.
The defendant, Lionel Young, appeals his conviction and sentence for distribution of cocaine. His appointed counsel filed a brief assigning one error, and he filed a pro se brief assigning four additional errors. We amend his sentence to correct an error patent and otherwise affirm.

STATEMENT OF THE CASE
On February 10, 1999, Lionel Young was charged by bill of information with possession and distribution of cocaine in violation of La. R.S. 14:967. On February 12, 1999, he was arraigned and pleaded not guilty. On May 5, 1999, a twelve-person jury found him guilty of distribution of cocaine, but acquitted him of the possession charge.[1] On January 27, 2000, the trial court sentenced him to five years without the benefit of parole, probation or suspension of sentence. On that same date, the state filed a multiple bill. On March 31, 2000, following a hearing, the trial court adjudicated Mr. Young a second felony offender. On May 19, 2000, the trial court re-sentenced him to fifteen years "without benefit," which was construed to mean without benefit of parole, probation or suspension of sentence. On November 29, 2001, this court granted Mr. Young's writ application finding that he was entitled to appeal his conviction and sentence. On April 5, 2002, the trial court granted Mr. Young an out of time appeal. On August 30, 2002, this court denied Mr. Young's motion for an extension of time to file his *189 supplemental pro se brief. As noted, both Mr. Young and his appointed counsel filed briefs with this court.

STATEMENT OF THE FACTS
Mr. Young was arrested for distributing cocaine to an undercover police officer. The undercover buy was part of an ongoing narcotics operation called "Operation Trick-or-Treat." It was solely a buy operation with the bust (arrest) to follow at the end of the operation. This was a joint operation between the New Orleans Police Department (NOPD) and the Louisiana State Police that lasted about six weeks. The area in which the operation was conducted was one in which there was a high number of complaints of drug use and activity.
Simply stated, the operation involved three levels of police participation; to wit: undercover officers, a case handler, and a take-down team. The undercover officers' role was to make the drug buy and to communicate the seller's description and location to the take-down team. Because the undercover officers could not use the police radio, the case handler's role included relaying the undercover officers' description of the suspect over the police radio to the take-down team. To do so, the case handler was stationed nearby to monitor over an audio transmitter the officers' conversations with potential suspects. The take-down team's role was to enter the area, locate the suspect, and obtain information from the suspect to facilitate a subsequent arrest. Generally, it took about two to three minutes from the time the take-down team received the description until they arrived in the area and stopped the suspect.
On September 22, 1998, NOPD Officer Valdemetria McCollum and Louisiana State Police Officer Derrick Stewart were working as the undercover agents in this operation. Riding in an unmarked vehicle that was equipped with both an audio and video recorder and an audio transmitter and looking for potential street corner drug dealers, Officer McCollum spotted Mr. Young in the area of Chippewa and Josephine Streets. She testified that her attention was drawn to him because of certain gestures that he made which she construed as flagging her down.
When Officer McCollum stopped the vehicle, Mr. Young approached first on the passenger side, where Officer Stewart was seated. Because the passenger side door was always kept locked for the officers' protection, Mr. Young was forced to walk to the driver's side where Officer McCollum was seated and where the microphone and recording equipment apparently was located. As he walked over, Officer McCollum relayed a description of him over the audio transmitter. When he approached her, he inquired as to what she was looking for; she replied "a dime"ten dollars worth of cocaine. He answered that he did not have dimes but that he could get her a twenty or a slab. She then agreed to buy a twentytwenty dollars worth of cocaine. Following Mr. Young's instructions, she circled the block while he went to get the drugs. When she returned, he flagged her down. The actual drug deal then took place; he handed her an off-white, rock-like substance, and she handed him two ten dollar bills. She then exited the area. While doing so, she gave a second description of Mr. Young over the audio transmitter.
According to Officer McCollum, Mr. Young was easy to identify based on his clothing because he had on a Michigan sports team cap, a dirty white t-shirt, black jean shorts, and unlaced tennis shoes without socks. She also stated that he had a gold tooth. Officer McCollum's testimony regarding Mr. Young's clothing description *190 was corroborated by the testimony of both Detective Robert Ferrier, the case handler, and Detective Jeffrey Keating, a take-down team member. Indeed, Detective Keating testified that he readily located Mr. Young based on Officer McCollum's clothing description.
Within minutes of the undercover officers' departure from the area, Detective Keating and his partner moved in, located Mr. Young and conducted a field interview in order to obtain pertinent information to identify him for a later arrest. Upon locating Mr. Young, Detective Keating and his partner exited their police unit, identified themselves, approached him, and then obtained information from him. Their meeting with Mr. Young lasted about fifteen to twenty minutes.
Detective Keating detailed the following information that they obtained from Mr. Young: the location of stop (Josephine and Chippewa street), date (September 22, 1998), time (2:45 p.m.), suspect's name (Lionel Young), address (2120 Annunciation Street), date of birth (August 1, 1952), scar (located on right arm), tattoo (left bicep), and other personal information (gold tooth with a star on it and missing a tooth). Detective Keating further testified that they recorded this information on a Field Identification Card (FIC). The purpose for recording all this information was to allow for the issuance of an arrest warrant at the end of the operation when a collective round up of the subjects was planned to take place.
Detective Keating further testified he did not arrest Mr. Young at that time because that was not part of the operation; instead, an arrest warrant was eventually issued about six weeks later. Although he did not search Mr. Young, Detective Keating testified that he did do a weapons pat down. He found neither weapons nor drugs on Mr. Young, but he recalled finding twenty dollars in Mr. Young's hands.
Both Detective Keating and Officer McCollum subsequently met separately with Detective Ferrier. At those meetings, Detective Ferrier obtained from Officer McCollum the off-white, rock-like substance and the videotape, and he obtained the FIC from Detective Keating. The officers involved in the operation also met at the station; based on the information the officers provided, they were able to produce a photograph of Mr. Young. Both Officer McCollum and Detective Keating positively identified that photograph as the suspect with whom they had just met. At that time, Detective McCollum also viewed the videotape and confirmed it was an accurate portrayal of the transaction she had just had with Mr. Young.
Detective Ferrier also testified regarding his participation in the ongoing operation as a case handler. He stated that he was stationed in a vehicle two to three blocks away from the undercover officers and that he was monitoring the audio transmission. As noted, he corroborated Officer McCollum's testimony regarding the clothing description of Mr. Young that he relayed over the police radio to the take-down team. He further testified that his role as "case handler" also included preparing the arrest warrant and the police report. As noted, due to the ongoing nature of the undercover drug buy operation, the arrest warrant was not issued until about six weeks later.
The state introduced into evidence and played for the jury the videotape capturing the entire drug deal between Officer McCollum and Mr. Young. The state also introduced the testimony of Criminalist Harry O'Neal, a NOPD chemist, who the State and the defense stipulated was an expert in forensic chemistry. Mr. O'Neal testified that the off-white, rock-like substance *191 Officer McCollum obtained from Mr. Young tested positive for cocaine.

DISCUSSION

ERROR PATENT AND COUNSELED ASSIGNMENT OF ERROR
A review of the record reveals an error patent in Mr. Young's sentence that is also assigned as error by Mr. Young. In resentencing Mr. Young as a multiple offender, the trial court imposed a fifteen year sentence "without benefits," which was construed to mean without benefit of parole eligibility for the entire fifteen years. Mr. Young argues that the habitual offender statute restricts probation and suspension of sentence only and that the trial court lacked the authority to limit his parole eligibility for his entire sentence. He thus seeks a remand for re-sentencing.
Agreeing in part with Mr. Young's argument, the State asserts that when the trial court sentenced Mr. Young as a second felony offender the entire fifteen years should have been without benefit of probation or suspension of sentence, but only the first five years should have been without benefit of parole eligibility. The State is correct.
The multiple offender statute does not restrict parole eligibility; it restricts only probation and suspension of sentence. See La. R.S. 15:529.1(G)(providing that "[a]ny sentence imposed under the provisions of this Section shall be without benefit of probation or suspension of sentence.") Restrictions on parole eligibility must be based on the sentencing provision for the underlying conviction. See State v. Pittman, 95-382, p. 33 (La.App. 5 Cir. 10/1/96), 683 So.2d 748, 765 (citing State v. See, 467 So.2d 525 (La.1985)). In this case, the sentencing provision for the underlying conviction is La. R.S. 40:967(B)(4)(b), which provided for a five year restriction on parole at the time of the offense.[2] The trial court erred insofar as it restricted Mr. Young's parole ineligibility beyond the first five years of his sentence.
Pursuant to La.C.Cr.P. art. 882, an appellate court may correct an illegal sentence. We, therefore, amend Mr. Young's sentence to provide that the entire fifteen years are without benefit of probation or suspension of sentence, but that only the first five years are without benefit of parole eligibility.

PRO SE ASSIGNMENT OF ERROR NUMBER ONE
Mr. Young's first assignment of error is the inadequacy of the trial transcript. He argues that the trial transcript is replete with inaudible statements, missing pages, and duplicate pages, hindering his ability to review the record for errors and hindering this court's review of his assigned errors. Citing State v. Deruise, 98-0541 (La.4/3/01), 802 So.2d 1224, 1234, he argues that he has a right to a complete transcript of the trial proceedings, particularly *192 where trial counsel is not appellate counsel.
La. Const. Art. I, § 19 guarantees all defendants a right to appeal "based upon a complete record of all evidence upon which the judgment is based."[3] Recently, in State v. Frank, 99-0553 (La.4/16/01), 803 So.2d 1, the Louisiana Supreme Court enunciated a three-part standard for reviewing incomplete record claims. First, "[m]aterial omissions from the transcript of the proceedings at trial bearing on the merits of an appeal will require reversal." 99-0553 at pp. 20-21, 803 So.2d at 19-20.[4] Second, "inconsequential omissions or slight inaccuracies do not require reversal." Frank, supra.[5] "Finally, a defendant is not entitled to relief because of an incomplete record absent a showing of prejudice based on the missing portions of the transcripts." Frank, supra (citing State v. Castleberry, 98-1388, p. 29 (La.4/13/99), 758 So.2d 749, 773).
Applying that standard to the instant case, we conclude that the trial transcript before us falls within the second Frank category of "inconsequential omissions or slight inaccuracies," which do not require reversal but rather is adequate for appellate review. Although the trial transcript in this case is replete with inaudible references, it includes the testimony of the State's six witnesses as well as the defense's three witnesses. Although Mr. Young refers to two pages that are missing and two pages that are duplicated in the record that he was provided, the original record before this court includes those two missing pages and does not include any duplicate pages.[6] Moreover, as summarized in the detailed recitation of the facts set forth above, this court was fully able to ascertain from the transcript the testimony presented at trial. Given the overwhelming evidence of Mr. Young's guilt, including the videotape recording of the drug deal, the inaudible references in the trial transcript are inconsequential and do not warrant a reversal of his conviction.
*193 In so finding, we note this case is analogous to State v. Harry, 2001-2336, pp. 3-5 (La.App. 4 Cir. 6/26/02), 823 So.2d 987, 991-92, in which we rejected a similar argument. In Harry, supra, we found that the trial transcript as a whole was coherent and understandable, noting it included a complete, coherent transcription of the trial with only short phrases, statements, series of words, or single words referenced as "inaudible." The same is true in this case.
A second prong of Mr. Young's inadequacy of the record argument is his assertion that we erred in denying his August 2002 request for an extension of time to file his supplemental appellate brief. He requested that we grant him an extension of time while he pursued a request in the trial court to obtain a transcript of the voir dire, opening and closing arguments, and the jury instructions. In denying his request, we stated that "the record already provided to the defendant-appellant to use in preparing a supplemental brief contains the objections made during voir dire and closing argument, and certificates from the court reporter that there were no objections during opening statements and the charge to the jury."
In addressing this argument, we note that Mr. Young's trial attorney failed to raise any objections during those portions of the proceedings. As a result, any alleged error occurring during those proceeding could not be reviewed on appeal because it was not preserved for appellate review. Nor do we find the lack of these non-evidentiary proceedings from the record sufficient to render it constitutionally inadequate. See State v. Goodbier, 367 So.2d 356, 357 (La.1979)(declining to reverse when record did not include transcript of voir dire examination and court reporter's affidavit indicated that no objections were made by the attorneys during voir dire); see also State v. Simpson, XXXX-XXXX, p. 14 (La.App. 4 Cir. 10/16/02), 829 So.2d 650, 660 (rejecting similar argument regarding unavailability of jury charges). For these reasons, we find Mr. Young's arguments regarding the inadequacy of the record unpersuasive.

PRO SE ASSIGNMENT OF ERROR NUMBER TWO
Mr. Young's second assignment of error is that the in-court identification procedure was impermissibly suggestive and that the overall evidence of identification was insufficient to establish he was the person that committed the crime. In this regard, we find it significant to stress that the witness whose identification testimony Mr. Young contests was a police officer. Particularly, he challenges Officer McCollum's testimony, noting that the prosecutor asked her leading questions and failed to ask her to make an in-court identification of Mr. Young until the end of direct examination.
The gist of Mr. Young's argument is that this is a case in which identity is disputed and the state must therefore negate any reasonable probability of misidentification in order to satisfy its burden of establishing every element of the crime charged beyond a reasonable doubt. See State v. Coleman, XXXX-XXXX, pp. 4-5 (La. App. 4 Cir. 10/23/02), 831 So.2d 375, 377-378.[7] When, as here, the reliability of the *194 defendant's identification is challenged a five-part test is utilized; to wit: (1) the opportunity of the witness to view the assailant at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the assailant; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the confrontation. Id. (citing Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977)).
Examining Officer McCollum's testimony in light of those factors, she had ample opportunity to view Mr. Young during the drug deal. Indeed, she testified that she got a good look at him. Her attention was sharply focused on him because she had to verbalize a description of him to relay to the take-down team. She also testified that she was certain of her identity of Mr. Young based on the videotape and the photograph. Finally, she made the photographic identification of him at the station shortly after the crime. Officer McCollum's testimony thus satisfies the five-factor test.[8]
In an additional attempt to establish his claim of misidentification, Mr. Young placed great emphasis at trial and on appeal on a reference in the police report to someone named Anderson. Reading from the police report, Detective Ferrier testified at trial that the paragraph containing that reference states:
"Detectives located at the Second District station had checked Lionel Young's name via the Motions computer and located State identification number and ran that number through *195 the NOPD print track machine. Young's State identification number, which was a picture, which was printed and viewed by an undercover detective. Detectives McCollum and Stewart positively identified this picture of Anderson as being the same person who sold them one piece of an off-white, rock-like substance." (Emphasis supplied).
Responding to questions regarding that reference, Detective Ferrier repeatedly testified that this was simply a typographical error and that no one by that name was involved in the drug deal at issue. Detective Ferrier further explained that this was a typed report, that he apparently had typed over another similar report, and that he had simply neglected to change the name. The jury, therefore, was presented with a credibility call regarding that reference, which it apparently resolved in favor of the State.
In sum, we conclude that the testimony of Officer McCollum and Detectives Keating and Ferrier coupled with the other evidence satisfied the State's burden of negating any reasonable possibility of misidentification and of proving beyond a reasonable doubt that Mr. Young committed the crime.

PRO SE ASSIGNMENT OF ERROR NUMBER THREE
Mr. Young's third assignment of error is that the trial court erred in charging the jury that it was to consider only the evidence presented at trial, without charging the jury that they may also consider the lack of evidence as well. The alleged charge that Mr. Young assigns as error was in reality the trial court's explanation to the jury of the meaning of a stipulation. This occurred during the course of the trial when the State and defense counsel stipulated that Mr. O'Neal was an expert in the field of forensic chemistry. Following that stipulation, the trial judge gave the jury the following explanation of a stipulation:
Court: Okay. Ladies and Gentlemen. A stipulation is one except[ion] to the rule that you will hear. You are to consider only the testimony and evidence that were permitted to be introduced during the trial. Now when state and defense counsel stipulate, that means that they agree upon a fact. Then there's no further need for questions or any other elements or testimony on that fact. So you've heard the stipulation that Officer Harry O'Neal is an expert in this area.
Mr. Young attempts to equate the above explanation to an improper jury charge to the jury that it could not find reasonable doubt from the lack of evidence. Given this explanation by the trial court was clearly not a jury charge coupled with the fact that Mr. Young has failed to establish how this explanation could have prejudiced him, we find this argument clearly is not persuasive.

PRO SE ASSIGNMENT OF ERROR NUMBER FOUR
Mr. Young's final assignment of error is that he was denied a fair trial when a juror admitted to playing a board game and when the videotape of the drug deal was replayed for a class of school children present in the courtroom. Both these events occurred after the State had presented its case-in-chief and the jury was viewing the documents and evidence filed into the record by the state. At that point, the trial court asked the jurors whether it would be a distraction if, while they were looking at the evidence, the police officer played the videotape for the school children, and the jurors responded no. The trial court judge then questioned *196 one of the jurors because the judge believed that juror was taking notes. The juror responded that she had not been taking notes, but playing a board game.
The record reflects that both of these events were handled by the trial court on the record as follows:
BY THE COURT:
[To the jurors] Has everyone had an opportunity to look at the exhibits? Ma'am, you're not keeping notes? You can't keep notes. You may have heard last
BY THE JUROR:
I'm not. I was playing a board game.
BY THE COURT:
In a civil court, they passed a law about a year and a half ago where the jurors can keep notes. But they did not pass that for criminal cases. We still have to rely on our memory and testimony that you heard.
Also, we asked you all if you would find that showing the tapes to the students would be a distraction, and we also instructed the officer to keep it down, and I didn't hear anything. Did any of you all hear her explanation to the children?
BY THE JURORS:
No.
Given that the trial court appears to have appropriately addressed these matters on the record coupled with the lack of any contemporaneous objection by defense counsel, we find this argument unpersuasive. See La.C.Cr.P. art. 841 (providing that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence").

DECREE
For the foregoing reasons, we affirm the conviction, amend the sentence to provide that the first five years are to be without parole eligibility, and affirm the sentence as amended.
CONVICTION AFFIRMED; SENTENCE AFFIRMED AS AMENDED.
NOTES
[1] Given Mr. Young is the sole appellant and given that the jury acquitted him of the possession charge, the facts surrounding that charge, which was based on an unrelated seizure of a crack pipe on February 3, 1999, are not before us and are thus not addressed.
[2] At the time of the offense, La. R.S. 40:967(B)(4)(b), provided:

Distribution, dispensing, or possession with intent to produce, manufacture, distribute or dispense cocaine or cocaine base or a mixture or substance containing cocaine or its analogues as provided in Schedule II(A)(4) or R.S. 40:964 shall be sentenced to a term of imprisonment at hard labor for not less than five years nor more than thirty years, with the first five years of said sentence being without benefit of parole, probation, or suspension of sentence; and may, in addition, be sentenced to pay a fine of not more than fifty thousand dollars.
See State v. Mayeux, XXXX-XXXX (La.6/21/02), 820 So.2d 526 (noting well-settled general rule that the law in effect at the time of the commission of the offense is determinative of the penalty).
[3] See La.C.Cr.P. art. 843 (requiring that in all felony cases the recording of "all the proceedings, including the examination of prospective jurors, the testimony of witnesses, statements, rulings, orders, and charges by the court, and objections, questions, statements and arguments of counsel"); La. R.S. 13:961(C)(providing that in criminal cases tried in district court the court reporter "shall record all portions of the proceedings required by law or the court.")
[4] See State v. Robinson, 387 So.2d 1143 (La.1980)(reversing given that testimony of a state and defense expert witness was missing); State v. Ford, 338 So.2d 107 (La.1976)(finding omissions material given that substantial portions of the record were missing, including the testimony of four State witnesses, voir dire examination of prospective jurors, and the prosecutor's opening statements); see also State v. Bright, XXXX-XXXX (La.App. 4 Cir. 2/6/02), 809 So.2d 1112, 1117 (finding record inadequate given "[t]he cumulative effect of the missing portions of testimony of the defendant and other material witnesses, and the frequency of `inaudible' and `spelled phonetically' in the transcript"); State v. Diggs, 93-0324 (La.App. 4 Cir. 6/29/95), 657 So.2d 1104 (citing Ford, supra, and finding the unavailability of an officer's complete testimony necessitated a new trial since it could not be determined whether the missing testimony was substantial or inconsequential).
[5] See State v. Goodbier, 367 So.2d 356, 357 (La.1979)(declining to reverse when record did not include transcript of voir dire examination and court reporter's affidavit indicated that no objections were made by the attorneys during voir dire); see also State v. Lyons, 597 So.2d 593 (La.App. 4th Cir.1992)(declining to reverse when record did not include some of the jury charges, transcript of voir dire, impaneling of jury or opening statement).
[6] As Mr. Young contends, the duplicate copy of the record does indeed have two pages of the transcript missing and two pages duplicated.
[7] It is well-settled that the standard for reviewing a claim of insufficient evidence is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found all of the essential elements of the offense proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The reviewing court is to consider the record as a whole and not just evidence most favorable to the prosecution; and if rational triers of fact could disagree as to the interpretation of the evidence, the rational decision to convict should be upheld. State v. Mussall, 523 So.2d 1305 (La.1988). Additionally, the reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. Id. The trier of fact's determination of credibility is not to be disturbed on appeal absent an abuse of discretion. State v. Cashen, 544 So.2d 1268 (La. App. 4 Cir.1989).

When circumstantial evidence forms the basis for the conviction, such evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438. The court does not determine whether another possible hypothesis suggested by the defendant could afford an exculpatory explanation of the events. Rather, this court when evaluating the evidence in the light most favorable to the prosecution, must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under Jackson. State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012. This is not a separate test from Jackson, but is instead an evidentiary guideline for the jury when considering circumstantial evidence, and this test facilitates appellate review of whether a rational juror could have found the defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984).
La. R.S. 40:967 provides that it shall be unlawful for any person to knowingly or intentionally: produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute, or dispense a controlled dangerous substance analogue classified in Schedule II. A defendant is guilty of distribution of cocaine when he transfers possession or control of cocaine to his intended recipient. State v. McGee, 98-2116, p. 10 (La.App. 4 Cir. 2/23/00), 757 So.2d 50, 58. The state must show (1) delivery or physical transfer; (2) guilty knowledge of the controlled dangerous substance at the time of transfer; and (3) the exact identity of the controlled dangerous substance. Id.
[8] We further note that defense counsel did not object to the in-court identification of the defendant by Officer McCollum, nor is there any indication that defense counsel filed a motion to suppress the identification. Therefore, the defendant has failed to preserve this issue for appellate review. La.C.Cr.P. art. 841 provides that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence."